**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| CELL AND NETWORK SELECTION LLC, | § | |
| | § | Civil Action No. 6:11-cv-00706-LED |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| AT&T MOBILITY LLC, | § | Jury Trial Demanded |
| HTC CORPORATION, HTC AMERICA, | § | |
| INC., SIERRA WIRELESS, INC., and | § | |
| SIERRA WIRELESS AMERICA, INC., | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION TO
<u>TRANSFER TO THE SOUTHERN DISTRICT OF CALIFORNIA</u>**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..............................................................................................................1

II.  BACKGROUND .............................................................................................................2

    A.  Procedural Background...........................................................................................2

    B.  Factual Background ................................................................................................2

        1.  CNS...........................................................................................................3

        2.  Sierra Wireless ........................................................................................4

        3.  HTC...........................................................................................................5

        4.  Qualcomm, a Key Third Party ...............................................................6

        5.  AT&T ........................................................................................................6

        6.  Third Party Prior Art Witnesses ...........................................................7

III.  CNS' CLAIMS SHOULD BE TRANSFERRED TO THE SOUTHERN
     DISTRICT OF CALIFORNIA BECAUSE IT IS CLEARLY MORE
     CONVENIENT ................................................................................................................8

    A.  Applicable Legal Standard .....................................................................................8

    B.  CNS' Claims Against Defendants Could Have Been Brought in the
       Southern District of California................................................................................9

    C.  CNS' Choice of Venue is Entitled to Little Weight...............................................10

    D.  The Private Interest Factors Weigh Heavily In Favor of Transfer ........................10

        1.  A Number of Witnesses and Documents are in the Southern
           District of California; None are in the Eastern District of Texas...............10

        2.  The Availability of Compulsory Process to Secure the Attendance
           of Witnesses Favors Transfer ..................................................................11

        3.  The Cost of Attendance for Willing Witnesses Strongly Favors
           Transfer to California................................................................................12

        4.  No Practical Problems Arise in Connection with Transferring this
           Case to the Southern District of California..............................................13

    E.  The Public Interest Factors Weigh Heavily In Favor of Transfer .........................13

        1.  Having Localized Interests Decided at Home Strongly Favors
           Transfer ...................................................................................................13

        2.  The Remaining Public Interest Factors are Neutral.................................15

IV.  CONCLUSION................................................................................................................15

203044958

## TABLE OF AUTHORITIES

Page(s)

CASES

ATEN Int'l Co. Ltd. v. Emine Tech. Co, Ltd.,
    261 F.R.D. 112 (E.D. Tex. June 25, 2009) ...........................................................................14

Bracket v. Hilton Hotels Corp.,
    619 F. Supp. 2d 810 (N.D. Cal. 2008) .................................................................................11

Dataquill Ltd. v. High Tech Computer Corp.,
    No. 08cv543 (S.D. Cal. filed Mar. 25, 2008)........................................................................10

Hoover Grp., Inc. v. Custom Metalcraft, Inc.,
    84 F.3d 1408 (Fed. Cir. 1996).................................................................................................9

In re Acer Am. Corp.,
    626 F.3d 1252 (Fed. Cir. 2010)..............................................................................................14

In re Genentech,
    566 F.3d 1338 (Fed. Cir. 2009)..............................................................................................10

In re Microsoft Corp.,
    630 F.3d 1361 (Fed. Cir. 2011).........................................................................................9, 10

In re Nintendo Co., Ltd.,
    589 F.3d 1194 (Fed. Cir. 2009).....................................................................................2, 12, 14

In re TS Tech USA Corp.,
    551 F.3d 1315 (Fed. Cir. 2008)..............................................................................................14

In re Volkswagen AG (Volkswagen I),
    371 F.3d 201 (5th Cir. 2004) ..................................................................................8, 9, 12, 14

In re Volkswagen of Am., Inc. (Volkswagen II),
    545 F.3d 304, 315 (5th Cir. 2008) (en banc) ......................................................................8, 9

Optimum Power Solutions,
    794 F. Supp. 2d 696, 701 (E.D. Tex. 2011)..........................................................................11

Intravisual, Inc. v. Fujitsu Ltd.,
    No. 2:10-cv-90, 2011 WL 4378080 (E.D. Tex. Sept. 20, 2011)..............................................9

Triton Tech. of Tex., LLC v. Nintendo of Am. Inc., et al.,
    No. 2:10-cv-00328-JRG, Dkt. No. 90 at 4 (E.D. Tex. Jan. 23, 2012) .....................................9

203044958

*West Coast Trends, Inc. v. Ogio Int'l, Inc.*,
No. 6:10-cv-688, 2011 WL 511780 (E.D. Tex. Oct. 27, 2011) (Love, J.) ............................15

STATUTES

28 U.S.C.
§§ 1391(c), 1400 (b) ..................................................................................................9
§ 1404(a) ...................................................................................................1, 8, 12

203044958

## I.     INTRODUCTION

Defendants Sierra Wireless, Inc., Sierra Wireless America, Inc., HTC Corporation, HTC America, Inc., and AT&T Mobility LLC (collectively "Defendants") respectfully move to transfer venue to the Southern District of California under 28 U.S.C. §1404(a) because it is a more convenient venue for this case.

The Southern District of California is not only the most convenient forum, it is the forum most likely to ensure an efficient trial on the merits because critical witnesses and evidence—including key third party witnesses who otherwise would not be available for trial in the Eastern District of Texas—are located in the Southern District of California.  The patent-in-suit is directed to a method describing how a mobile device chooses to switch between different cell towers (otherwise known as an "idle handoff").   The accused devices perform "idle handoffs" in accordance with the processes defined by the 3GPP standards.  The accused devices are mobile devices (mobile hotspots and smartphones) made by Sierra Wireless and HTC. And third party Qualcomm makes the chips in those devices that perform the "handoff."  Both Sierra Wireless America, Inc., and third party Qualcomm are based in the Southern District of California. Therefore, the majority of documents and witnesses concerning the accused technology made by Sierra Wireless and Qualcomm are in the Southern District of California, where Qualcomm is subject to compulsory process.

Further, a majority of HTC's United States witnesses with relevant knowledge reside on the West Coast. It would be more cost-efficient and time-efficient for those witnesses to travel to the Southern District of California than to Tyler for trial.

Defendant AT&T is merely a reseller of the accused products and does not make the devices.  Despite plaintiff's attempt to implicate AT&T's LTE network in its Amended Complaint (D.I. 8, at ¶ 16), the patent-in-suit only discloses purported advances to the mobile

1

device—not to the pilot channel signals transmitted from the base stations in the network (*see* Ex. A, '551 patent at 1:36-2:9) (discussing pilot channel signals as part of the prior art). Therefore, the main witnesses and documents concerning the operation of the accused mobile devices and how they relate to the patent-in-suit necessarily reside with Sierra, HTC, and Qualcomm—not AT&T.  The location of AT&T's documents and witnesses is less relevant to the transfer analysis.

In contrast, few if any relevant witnesses or documents appear to be located in the Eastern District of Texas.  The Federal Circuit has repeatedly instructed that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citations omitted). This is such a case, and transfer is appropriate.

## II.    BACKGROUND

### A.    Procedural Background

Cell and Network Selection ("CNS") filed this case on December 29, 2011, against HTC, AT&T Mobility, and AT&T Inc., alleging infringement of the '551 patent.  An amended complaint was filed on April 12, 2012, adding Sierra Wireless, Inc., and Sierra Wireless America, Inc., as defendants.  On August 1, 2012, AT&T Inc. was dismissed from the case. Since then, all defendants have answered.  A status conference has been set for November 14, 2012.  No trial date has been set, and the parties have not begun discovery.

### B.    Factual Background

The patent-in-suit relates to a method for controlling an idle handoff from one cell tower to another.  (*See* Ex. A, '551 patent at 1:11-20).  The plaintiff has described the purported invention of the '551 patent: "If the mobile device detects a pilot channel signal from another

2

base station that is sufficiently stronger than that of the current base station and other circumstances indicate a handoff is advantageous, the mobile device determines that an idle handoff should occur and effects such a handoff." (*See* D.I. 8, at ¶ 14). Therefore, the mobile device itself controls the detection and handoff from one cell tower to another. (*See also* Ex. A, '551 patent at 4:18-45). The network functionality included in the claims of the '551 patent (base station transmitted "pilot channel signals" and "paging signals") are disclosed as part of the prior art. (*See* Ex. A, '551 patent at 1:36-2:9). The patent-in-suit thus implicates the functionality of the accused mobile devices, not the network on which they operate.

The 3GPP, a collaboration between groups of telecommunications associations, has developed standards that define processes to execute an "idle handoff." (Decl. of Michael Prise ¶4). The accused devices operate in accordance with these standards to initiate an "idle handoff." (*Id*).

The named inventors of the '551 Patent are Kyu-Nam Kim of Seoul, Korea, and Dong-Woo Kim of Kyunggi-Do, Korea. The patent was assigned to Shensigi Telecomm, Inc., and then to SK Telecom Co., Ltd., both located in Seoul, Korea. The last recorded assignee of the asserted patent is SK Telecom Co. The United States Patent and Trademark Office records do not show any assignment of the patent to Plaintiff CNS. (Ex. B). The attorney responsible for prosecuting the patent was Patricia E. Hong, who currently resides in Bethesda, Maryland.

### 1.    CNS

CNS is a non-practicing entity formed on June 11, 2011, only six months before filing the lawsuit. It is a limited liability company claiming to have a principal place of business at 6136 Frisco Square Boulevard, Suite 385, Frisco, Texas 75034. (D.I. 1, at ¶ 5). CNS is governed by Acacia Research Group LLC, a non-practicing entity that shares the same address in Frisco as

CNS. (Ex. C).[1] Acacia Research Group LLC is a wholly owned subsidiary of Acacia Research Corporation, which is located in Newport Beach, California.[2]

### 2. Sierra Wireless

Sierra Wireless, Inc., is a Canadian Corporation with its principal place of business located in Richmond, British Columbia, Canada. (Decl. of James Kirkpatrick ¶ 2). Sierra Wireless America, Inc., a wholly-owned subsidiary of Sierra Wireless, Inc., is a Delaware corporation with its principal place of business located in Carlsbad, California, about 25 miles from San Diego, in the Southern District of California. (*Id*. at ¶ 3). Sierra Wireless, Inc., and Sierra Wireless America, Inc. (collectively "Sierra Wireless"), coordinate efforts to design, manufacture, and market mobile broadband devices, wireless embedded modules, and intelligent gateways and routers. (*Id*. at ¶ 5). Sierra Wireless America, Inc., employs approximately 129 people in California, with approximately 105 based out of Carlsbad, California. (*Id*. at ¶ 6).

With regard to the accused Sierra Wireless AirCard® 754S mobile hotspot ("Accused Sierra Wireless Device"), Sierra Wireless designed and developed the accused device jointly between Sierra Wireless' Richmond, Canada, and Carlsbad locations. (*Id*. at ¶ 7). Operations, marketing, sales, pricing and financial activities related to the Accused Sierra Wireless Device primarily occur in Richmond, Canada, and the Southern District of California. (*Id*). To the extent there are personnel knowledgeable about design and development, operations, sales, and pricing decisions for the Accused Sierra Wireless device in the United States, they are located in the Southern District of California. (*Id*). Further, documents and other information related to the Accused Sierra Wireless Device are located in, or are more conveniently accessible in, the

---

[1] *See* http://acaciatechnologies.com/docs/CorporateBrochure.pdf.

[2] *Id*; *see* http://www.acaciaresearch.com/contact.htm.

Southern District of California.  (*Id*. at ¶ 8).  Sierra Wireless does not manufacture any products in Texas.  (*Id*. at ¶ 9).  And Sierra Wireless does not maintain any distribution facilities in Texas.  (*Id*. at ¶ 10).

The Accused Sierra Wireless Device includes components purchased from third party suppliers, such as a baseband processor supplied by Qualcomm.  (*Id*. at ¶ 11).  Qualcomm's principal place of business is in the Southern District of California. (*Id*). And none of Sierra Wireless' suppliers are located in the Eastern District of Texas.  (*Id*).

### 3.     HTC

HTC Corporation ("HTC Corp.") makes smartphones and tablets.  (Decl. of Stephanie Bariault ¶ 4).  HTC Corp. is a Taiwanese corporation with its principal place of business in Taoyuan, Taiwan.  (*Id*. at ¶ 3).  HTC Corp. is the parent company of HTC America, which is a Washington corporation with its principal place of business in Bellevue, Washington.  (*Id*. at ¶ 3).  HTC America coordinates its sales activity in the United States from its headquarters in Bellevue, Washington.  (*Id*. at ¶ 4).  The HTC product at issue in this case was primarily designed, developed, and manufactured in Taiwan and Bellevue, Washington.  (*Id*. at ¶ 7).  Technical, marketing, and sales documents related to the accused device are primarily located in Taiwan and Bellevue, Washington.  (*Id*. at ¶ 7).  HTC has no office in the Eastern District of Texas, and no HTC engineers or documents relevant to this action are located in the Eastern District of Texas.  (*Id*. at ¶¶ 3, 7, 8, 9).  HTC does not sell its devices directly to consumers, but instead sells its products through retailers, carriers, and third-party vendors in the United States, such as AT&T, who resell the devices to customers.  (*Id*. at ¶ 6).  The accused HTC device incorporates a baseband processor from Qualcomm.  (*Id*. at ¶¶ 10-11).

203044958

### 4.    Qualcomm, a Key Third Party

CNS has focused its infringement accusations against HTC's Vivid phone (an LTE (4G) device) and Sierra Wireless' AirCard® 754S mobile hotspot (also known as the AT&T Mobile Hotspot Elevate 4G), which are both resold by AT&T. All of the accused devices in this case employ Qualcomm baseband processor chips. (Kirkpatrick Decl. at ¶ 11; Bariault Decl. at ¶ 10). Given that the inner workings of the Qualcomm baseband processor chips are neither publicly disclosed nor otherwise available to the parties to this case, the engineers and programmers at Qualcomm will be necessary to understanding the functionality and architecture of the chips. (Kirkpatrick Decl. at ¶ 11; Bariault Decl. at ¶ 11). Qualcomm testimony, documents, and employees will likely be a key focus during discovery and trial and are therefore potentially critical to proving the claims and defenses in this case. These witnesses are located and available to testify in the Southern District of California, specifically San Diego—Qualcomm's principal place of business. (Kirkpatrick Decl. at ¶ 11; Bariault Decl. at ¶ 11).

Furthermore, on information and belief, after the filing of the application that issued as the '551 patent, Qualcomm entered a licensing agreement with SK Telecom Co., the currently listed assignee of the '551 Patent.[3] Therefore, Qualcomm may be licensed to the asserted patent, which would exhaust CNS' remedies against Defendants' use of Qualcomm chips.

For these reasons, Defendants will issue subpoenas to Qualcomm for documents and testimony relevant to this case.

### 5.    AT&T

AT&T Mobility LLC ("AT&T") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. (Prise Decl. at ¶ 3). AT&T is a retailer that

---

[3] *See* http://www.qualcomm.com/media/releases/1997/09/03/qualcomm-signs-agreement-sk-telecom-co-ltd-cdma-subscriberproducts-license.

resells HTC phones and tablets and Sierra Wireless mobile hotspots. (*Id*. at ¶ 3). AT&T neither designs nor manufactures the accused devices in this case. (*Id*. at ¶¶ 3, 5). AT&T has no facilities in the Eastern District of Texas for research, design, development, testing, or marketing related to the accused devices. (*Id*. at ¶ 5). AT&T's network operates in accordance with the 3GPP standards, and the handset vendors provide handsets that comply with 3GPP standards. (*See id*. at ¶¶ 4, 5). While AT&T has witnesses with knowledge relating to AT&T's network functionality, that functionality is not claimed, and their location is not relevant to the case.

### 6. Third Party Prior Art Witnesses

While Defendants' investigations have just begun, a number of prior art witnesses in California who likely have knowledge and documents relevant to invalidity, including possible derivation claims, have already been identified. Those witnesses include at least:

- Dr. Roberto Padovani, Adjunct Professor, University of California San Diego, co-inventor of U.S. Pat. No. 6,151,502. (Ex. D).

- Roy F. Quick, believed to be working in San Diego, California, co-inventor of U.S. Pat. No. 6,151,502. (Ex. D).

- Dr. Samir S. Soliman, Vice President of Technology at Qualcomm, San Diego, California, inventor of U.S. Pat. No. 6,055,428. (Ex. E).

- Dr. Daniel Wong, believed to be working in San Francisco, California, co-author of "Soft Handoffs in CDMA Mobile Systems," 1997 IEEE Personal Communications. (Ex. F).

- Dr. Tatsuya Suda, Professor, University of California Irvine, co-author of "An Adaptive Bandwidth Reservation Scheme for High-Speed Multimedia Wireless Networks." (Ex. G).

- Dr. Carlos Oliveria, Instructor, University of California Irvine, co-author of "An Adaptive Bandwidth Reservation Scheme for High-Speed Multimedia Wireless Networks." (Ex. G).

## III.    CNS' CLAIMS SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF CALIFORNIA BECAUSE IT IS CLEARLY MORE CONVENIENT

Defendants respectfully submit that the Court should transfer the case to the Southern District of California under 28 U.S.C. §1404(a).  Witnesses and documents that possess or provide evidence of the development, design, and manufacture of the accused devices, including the baseband processor chips, are located in the Southern District of California, or it will be more convenient to obtain the evidence in that venue.  The location of these documents and witnesses strongly favors transfer to the Southern District of California.

### A.    Applicable Legal Standard

The Court has authority to transfer venue under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, [and] in the interest of justice."  A motion to transfer venue should be granted only upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.  *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

The Court first decides the threshold question in applying the provisions of § 1404(a): whether the case could originally have been brought in the proposed transferee district.  *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004).  If the transferee district is a proper venue, then the Court turns to weighing the relative convenience of this District against those of the transferee district.  *Id.*

In making the convenience determination, the Court will consider several "private" and "public" interest factors, none of which are given dispositive weight.  *Id.*[4]  One factor that is

---

[4] The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. . . . The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the

given little weight in the determination is plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 315. The Federal Circuit has concluded that strategic efforts to manipulate venue and establish ties to a jurisdiction in anticipation of litigation is entitled to no weight in the transfer analysis. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011). After weighing the public and private factors in this action, the scale weighs heavily in favor of the Southern District of California as the more convenient venue.

### B. CNS' Claims Against Defendants Could Have Been Brought in the Southern District of California

This suit meets the threshold requirement that it could have been brought in the Southern District of California. A civil action for patent infringement may be brought in a judicial district where a corporate defendant is subject to personal jurisdiction. *See* 28 U.S.C. §§ 1391(c), 1400 (b); *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408 (Fed. Cir. 1996). The Southern District of California has personal jurisdiction over Sierra Wireless America, Inc., because it is based in that district. That facility houses documents related to hardware and usability design of the accused products. (Kirkpatrick Decl. at ¶ 8). Additionally, HTC has an office located in California. (Bariault Decl. ¶ 5). All of the defendants join in this motion and have thereby implicitly consented to jurisdiction in the Southern District of California. *See, e.g.*, *Triton Tech. of Tex., LLC v. Nintendo of Am. Inc., et al.*, No. 2:10-cv-00328-JRG, Dkt. No. 90 at 4 (E.D. Tex. Jan. 23, 2012) (J. Gilstrap); *see also Intravisual, Inc. v. Fujitsu Ltd.*, No. 2:10-cv-90, 2011 WL 4378080, at *2 (E.D. Tex. Sept. 20, 2011) (J. Ward) ("Lycos was one of the parties that had moved to transfer, and as a result, had implicitly consented to personal jurisdiction in the

---

avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citation omitted).

9

transferee forum.").  Thus, venue is proper in the Southern District of California, meeting the threshold transfer requirement.[5]

### C.    CNS's Choice of Venue is Entitled to Little Weight

CNS's presence in this District was established only six months before it filed this lawsuit.  (*See* Ex. C).  CNS appears to conduct no substantial business in this District.  CNS's attempt to establish venue in the Eastern District of Texas appears litigation-driven and should carry little weight. *Microsoft*, 630 F.3d at 1364.

### D.    The Private Interest Factors Weigh Heavily In Favor of Transfer

### 1.    A Number of Witnesses and Documents are in the Southern District of California; None are in the Eastern District of Texas

The relative ease of access to sources of proof—an important private interest factor—weighs in favor of transferring the case to the Southern District of California.  Witnesses and documents of critical importance to the claims and defenses in the case are located in or near the Southern District of California.  Applying Fifth Circuit law, the Federal Circuit has held that accessibility to an alleged infringer's proof is particularly important to the transfer analysis in patent cases because the majority of relevant evidence is provided by the alleged infringer.  *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

The Southern District of California is home to defendant Sierra Wireless America, Inc., and to key third-party witness Qualcomm, who supplies the broadband processor chips in the accused devices and who may be instrumental in a license/exhaustion defense by Defendants.  In

---

[5] Indeed, HTC has been sued in the Southern District of California before for patent infringement, and HTC did not contest jurisdiction.  *See*, *e.g.*, *Dataquill Ltd. v. High Tech Computer Corp.*, No. 08cv543 (S.D. Cal. filed Mar. 25, 2008).

addition, the majority of HTC's documents and witnesses are located in either Taiwan or Bellevue, Washington, and are closer to California than to Tyler. The convenience of the Sierra Wireless and HTC witnesses (and production of their documents) will therefore be served by transfer.

As a reseller for the accused products, AT&T will have few relevant technical documents related to the accused products. AT&T does not design, develop, or manufacture the accused products. (Prise Decl. at ¶¶ 3, 5). Sierra Wireless and HTC as the makers of the devices, and Qualcomm as the supplier of the processor chip that carries out cell tower selection in the accused devices, are the entities with witnesses and documentation that will provide an understanding of how the accused products relate to the asserted patent—not AT&T.

Given the gravity of the relevant evidence in California and on the West Coast, this factor weighs heavily in favor of transfer.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer

The ability to subpoena and compel non-party witnesses' attendance is an important factor in the transfer analysis, weighing more heavily in favor of transfer when "more third-party witnesses reside within the transferee venue." *Optimum Power Solutions*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011). The relevant third-party witnesses include Qualcomm employees who likely reside in or near San Diego, the location of Qualcomm's principal place of business in the Southern District of California. Further, Defendants have several prior art witnesses who are located in or near San Diego. Moreover, other third-party witnesses that reside in other parts of California would be subject to the Southern District of California's absolute subpoena power. *See Bracket v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California

district courts have the power to subpoena witnesses throughout the state. . . ."); *see also* *Volkswagen II*, 545 F.3d at 316 (favoring transfer to a venue with "absolute" subpoena power).

The inability to subpoena other third-party witnesses such as the inventors in Korea, or the prosecuting attorney in Maryland, is immaterial to this factor because they are outside of compulsory process in both districts.

Thus, California's absolute subpoena power over Qualcomm and its employees and other prior art witnesses strongly favors transfer to the Southern District of California.

### 3.  The Cost of Attendance for Willing Witnesses Strongly Favors Transfer to California

The cost and convenience of the parties and witnesses to attend trial bears on the transfer analysis.  The Federal Circuit has held numerous times that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co.*, 589 F.3d at 1198.  This factor weighs heavily in favor of transfer because the Southern District of California is the more convenient forum for nearly all parties and likely witnesses.

Travel time and cost to the Southern District of California is considerably less for the party witnesses and third-party witnesses than it would be to the Eastern District of Texas.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204-05.  Defendant Sierra Wireless America, Inc., and third-party witness Qualcomm are headquartered in the Southern District of California.  Their witnesses are likely all located in the transferee district.  The travel time for Sierra Wireless America, Inc., and Qualcomm witnesses to the

12

courthouse in the transferee district is therefore nominal compared to the 1,486 miles they would have to travel to get to Tyler.  (Ex. H)

And it is substantially more convenient for HTC witnesses traveling from Washington to appear in the Southern District of California than in Tyler (*Compare* Ex. I, *with* Ex. J) (**1,021 miles closer**).  The same convenience advantage also exists for those traveling from Sierra Wireless, Inc., from Richmond, British Columbia, Canada (*Compare* Ex. K, *with* Ex. L) (**675 miles closer**).  Traveling a shorter distance will reduce the amount of time that these witnesses are away from their homes and work.

Other relevant witnesses, including the named inventors and assignees located in Korea, are closer to California than Tyler.

It will, therefore, be more convenient and cost-effective for this case to be transferred to the Southern District of California because the vast majority of witnesses with relevant information either reside in or are closer to California than Texas.

### 4.    No Practical Problems Arise in Connection with Transferring this Case to the Southern District of California

Assessing considerations of judicial economy, transferring this case will not cause any practical problems. The case is in its earliest stages.  The parties have conducted no discovery to date, and the status conference is scheduled but has not yet taken place.  The case will not suffer delay or problems from being transferred to the Southern District of California.   This factor weighs in favor of transfer.

### E.    The Public Interest Factors Weigh Heavily In Favor of Transfer

### 1.    Having Localized Interests Decided at Home Strongly Favors Transfer

The Southern District of California has more of a connection to this matter than does the Eastern District of Texas.  As the Fifth Circuit and this Court have recognized, "[j]ury duty is a

burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. The transfer analysis considers "the 'factual connection' that a case has with both the transferee and transferor venues." *ATEN Int'l Co. Ltd. v. Emine Tech. Co, Ltd.*, 261 F.R.D. 112, 125 (E.D. Tex. June 25, 2009). "Generally, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests." *Id.* at 125–26. The Federal Circuit, applying Fifth Circuit law, has instructed that if the accused product is sold nationwide but many of the witnesses and evidence are located in the transferee venue, this factor favors transfer. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (transferring case where "there is no relevant connection between the actions giving rise to this case and the Eastern District of Texas except that certain vehicles containing TS Tech's [accused] headrest assembly have been sold in the venue," and where the majority of the identified witnesses, evidence, and events were located in the transferee forum or its neighboring state).

The presence of Sierra Wireless America, Inc., and Qualcomm in the Southern District of California establishes a strong local interest justifying transfer. *See In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2010) (finding a localized interest in the Northern District of California where "unlike the Eastern District of Texas, the Northern District of California has a localized interest in this matter. . . . [because] many of the companies alleged to cause that harm are all residents of that district. . .");  *In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009) (finding a localized interest in the Western District of Washington where "[t]he record shows that [Nintendo of America] is incorporated in Washington and has its principal place of business in the Western District of Washington. No parties, witnesses, or evidence have any material connection to the venue chosen by the plaintiff. Therefore, the record leaves only the conclusion

14

that the local interest in Washington clearly favors transfer. . . .").  A number of witnesses and documents regarding the accused mobile devices are located in the transferee district.  Having a Southern California jury decide whether California-designed and California-developed components and products infringe the patent-in-suit supports transfer.   The Southern District of California therefore has a strong local interest in this case.  Further, no known witness resides in the Eastern District of Texas.  Accordingly, the local interest factor weighs in favor of transfer.

### 2.        The Remaining Public Interest Factors are Neutral.

The remaining public interest factors—court congestion, the familiarity of the forum with the law, and the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law—are neutral.  The factor addressing administrative difficulties flowing from court congestion is neutral, as the Court has acknowledged the difficulty in assessing unreliable statistics regarding the disposition of patent cases.  *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 511780, at *4 (E.D. Tex. Oct. 27, 2011) (Love, J.) (discussing the "highly speculative" nature of this factor).  Neither forum tips the scale in favor or against transfer with respect to judicial economy because the median time from filing to disposition by trial of civil cases is faster in the Eastern District of Texas, but the disposition of all civil cases—not just those that go to trial—is faster in the Southern District of California than in the Eastern District of Texas.  (*See* Ex. M).  Both districts are equally capable of applying the patent law.  And there are no foreseeable issues regarding either conflicts of law or application of foreign law.

## IV.     CONCLUSION

For the aforementioned reasons, Defendants respectfully request that the Court transfer this action to the Southern District of California.

203044958

Dated: 10/26/2012                           Respectfully submitted,

                                            /s/ Fred I.  Williams
                                            Fred I. Williams (*Lead Attorney*)
                                            State Bar No.  00794855
                                            fwilliams@akingump.com
                                            Akin Gump Strauss Hauer & Feld LLP
                                            300 West 6th Street, Suite 1900
                                            Austin, Texas  78701
                                            Telephone: 512.499.6200
                                            Facsimile:  512.499.6290

                                            Todd E. Landis
                                            State Bar No.  24030226
                                            tlandis@akingump.com
                                            Akin Gump Strauss Hauer & Feld LLP
                                            1700 Pacific Avenue, Suite 4100
                                            Dallas, Texas  75201
                                            Telephone: 214.969.2800
                                            Facsimile: 214.969.4343

                                            David R. Clonts
                                            State Bar No. 04403700
                                            dclonts@akingump.com
                                            AKIN GUMP STRAUSS HAUER & FELD LLP
                                            1111 Louisiana St., 44th Floor
                                            Houston, TX 77002-5200
                                            Telephone: (713) 220-5800
                                            Facsimile: (713) 236-0822

                                            **ATTORNEYS FOR** DEFENDANT
                                            **AT&T MOBILITY, LLC**

                                            By: /s/ Fred I.  Williams
                                            Fred I. Williams (*Lead Attorney*)
                                            State Bar No.  00794855
                                            fwilliams@akingump.com
                                            Akin Gump Strauss Hauer & Feld LLP
                                            300 West 6th Street, Suite 1900
                                            Austin, Texas  78701
                                            Telephone: 512.499.6200
                                            Facsimile:  512.499.6290

203044958

Todd E. Landis
State Bar No.  24030226
tlandis@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Ashley E. Brown
State Bar No. 24078464
ambrown@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana St., 44th Floor
Houston, TX 77002-5200
Telephone: 713.220.5800
Facsimile: 713.236.0822

**ATTORNEYS FOR** DEFENDANTS
**HTC CORPORATION AND
HTC AMERICA, INC.**

By: /s/ Ronald F. Lopez
Ronald F. Lopez
California State Bar No.  111756
rflopez@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Telephone: 415.984.8200
Facsimile:  415.984.8300

**ATTORNEY FOR** DEFENDANTS
**SIERRA WIRELESS, INC., AND
SIERRA WIRELESS AMERICA, INC.**

17

203044958

CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 26th day of October, 2012, with a copy of the foregoing document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first class mail.


/s/ Fred I. Williams
Fred I. Williams

18

203044958